Filed 7/24/25  P. v. Avitia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FERNANDO AVITIA,<br><br>    Defendant and Appellant. | D083507<br><br><br><br>(Super. Ct. No. SCD288808) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

Fernando Avitia forced open the door to Ana A.'s apartment, repeatedly tried to shoot her with a misfiring gun, and ultimately beat her on the back of

her head with the malfunctioning firearm.  A jury found Avitia guilty of premeditated and deliberate attempted murder (Pen. Code, §§ 664/187, subd. (a); count 1); assault with a semiautomatic firearm (§ 245(b); count 2); first degree burglary (§ 459; count 3); unlawful possession of a firearm by a felon (§ 29800(a)(1); count 4); and misdemeanor resisting arrest (§ 148(a)(1); count 5).  The jury also found true beyond a reasonable doubt certain enhancements and factors in aggravation.  The trial court sentenced Avitia to an aggregate term of seven years to life consecutive to 27 years in prison.

On appeal, Avitia first contends the trial court erred in concluding section 654 did not apply to counts 1 and 2.  We, however, conclude otherwise.  The record discloses substantial evidence (1) Avitia had the opportunity to deliberate between his attempts to shoot at and kill Ana and his ultimate beating of her and (2) his intent shifted during that time.

Second, Avitia argues the court misinstructed the jury on the aggravating circumstances, and thus the court erred in imposing upper-term sentences on counts 2 through 4.  We conclude the court did not misinstruct the jury, as its instructions were legally correct and the onus was on Avitia to request more precise instructions.  Given the lack of instructional error, Avitia's corresponding, alternative claim for ineffective assistance of counsel fails.  Besides, Avitia forfeited his challenge to any sentencing error based on this alleged instructional error by failing to contemporaneously object.

Third, Avitia claims substantial evidence does not support the jury's finding that count 2 was committed with planning for purposes of aggravating Avitia's sentence.  As noted above, Avitia had the opportunity, even if briefly, to plan the assault after his attempts to shoot Ana failed.

Fourth, Avitia contends his trial counsel provided constitutionally ineffective assistance in failing to object to the trial court's alleged dual use of

the fact of great violence or great bodily injury both to aggravate the sentence and apply the great bodily injury enhancement for count 2. Yet there was no error to which counsel could have objected, as the court could rely on the crime's "cruel, vicious, and callous" nature in imposing the aggravating factor without necessarily implicating great bodily injury.

Fifth, Avitia argues substantial evidence does not support the jury's findings that count 4 was committed with planning and involved great violence or cruelty. We agree. As this is the only error we perceive, Avitia's claim of cumulatively prejudicial errors fails.

Accordingly, we reverse in part and remand for limited resentencing on count 4 consistent with this opinion. We otherwise affirm.

## I.

### A.

In November 2020, Ana's boyfriend died. Ana shared an apartment with her boyfriend's brother. In late December, the boyfriend's brother had friends over to mourn his brother's passing and celebrate his life. One of Ana's boyfriend's friends, Christian, overdosed at the event. Christian was Avitia's brother.

The following morning, Ana discovered Christian's body and called 911. After law enforcement arrived, other people, mostly Christian's family and friends, did, too. Christian's brothers, including Avitia, suspected Ana gave Christian drugs, causing his death, and confronted her. One of Christian's brothers—not Avitia—threatened to kill Ana if she was involved in Christian's death.

### B.

On January 12, 2021, Avitia's family held a visitation in memory of Christian. Ana did not attend because of Christian's brother's threat.

3

At about 2:00 p.m. that same day, Ana heard loud banging at her living room window. She looked through the front door peephole and saw Avitia holding a gun. Avitia was wearing a red memorial shirt for Christian bearing Christian's picture. Ana called 911, and an operator was on the line through some of the events that followed.

Avitia pounded on the door so hard that it broke open and hit Ana in the face. Avitia began going upstairs, but Ana yelled at him, so he came back downstairs. Avitia pointed the gun at Ana's leg and pulled the trigger. The gun did not fire, so Avitia took out and reinserted the loaded magazine.

Avitia pointed the gun at Ana's chest and pulled the trigger, but the gun again failed to discharge. He once more took the magazine out of the gun, and Ana ran upstairs to her teenaged daughter's bedroom, closed the door, and told her daughter to get in the closet. Ana followed her daughter into the closet but stood in the portion not covered by a door.

Avitia broke the door into Ana's daughter's room. Ana asked Avitia to stop and told him her daughter was there. He pointed the gun at Ana's chest and pulled the trigger, but the gun did not fire. Ana asked him to let her daughter go. When Avitia removed the magazine again, Ana instructed her daughter to leave, and she did.

Avitia pointed the gun at Ana a fourth time and pulled the trigger. The gun again failed to fire. After this fourth gun failure, Avitia was "pacing," "walking back and forth," "[t]rying to fix [the gun], hitting it, removing the magazine, putting it back in." But "he got frustrated to the point that he started hitting" Ana with the gun. Avitia hit her on the back of the head "[s]everal times" before she fell.

Avitia left. Ana got up and began yelling her daughter's name. When Ana could not find her daughter inside, she went outside. She saw Avitia

"walking calmly to the . . . get-away car." Once he got into the car, the driver pulled away.

C.

Ana was transported to the hospital and received what the treating physician described as "a lot of fentanyl" in the ambulance. The bridge of her nose had an open fracture that required suturing. "[T]here were two lacerations on the back of [her] head totaling about five or five and a half inches" requiring 13 staples. She was given "additional fentanyl and . . . oral medication" at the hospital for "severe pain." Ana had contusions on her left forearm and hand consistent with warding off an attack.

D.

The defense called as a witness Ana's ex-boyfriend from after the incident. He testified Ana told him about an incident that "happened fast" where she and "her kids" "got tied up" but she "didn't see who it was." She said she was going to go to court and identify somebody anyway.

Avitia's sister testified Christian's visitation was from noon to 8:00 p.m. According to her, Avitia showed up around noon wearing a black T-shirt bearing Christian's picture and handed the shirts out to others. Avitia then downed nearly a whole bottle of liquor and got drunk. Sometime around 2:00 or 3:00 p.m., some of Avitia's family members put Avitia in his cousin's car to drive him to someone's house to sleep but drove back about twenty minutes later. Avitia slept in the cousin's car until 8:00 p.m. or so, with his family checking on him at roughly half-hour intervals to make sure he was not vomiting. Avitia's sister's husband and Avitia's cousin testified similarly.

Avitia did not testify.

5

E.

During his closing argument, the prosecutor argued Avitia took several direct but ineffective steps to kill Ana for purposes of attempted murder on count 1, including (1) putting a loaded gun to someone's chest and pulling the trigger multiple times and (2) beating Ana over the head with the gun "until she play[ed] dead." As to count 2, assault with a semiautomatic firearm, the prosecutor noted "[a]n assault may take place by simply pointing a gun at somebody" but argued, "We have the beat-down. We know that the assault took place."

The jury found Avitia guilty of all charged counts. As to count 1, the jury found true allegations that (1) the attempted murder "was willful, deliberate and premeditated" (§ 189), (2) Avitia intentionally and personally used a firearm (§ 12022.53(b)), and (3) Avitia personally inflicted great bodily injury upon Ana (§ 12022.7(a)). As to count 2, the jury found true allegations that (1) Avitia intentionally and personally used a firearm in committing the assault with a firearm (§ 12022.5(a)) and (2) Avitia personally inflicted great bodily injury upon Ana (§ 12022.7(a)). As to count 3, first degree burglary, the jury found true allegations that (1) the burglary was of an inhabited dwelling (§ 460), (2) someone other than Avitia was present in the residence during the burglary (§ 667.5(c)(21)), (3) Avitia intentionally and personally used a firearm (§ 12022.5(a)), and (4) Avitia personally inflicted great bodily injury upon Ana (§ 12022.7(a)).

The jury also found true two aggravating factors: that "the offense" (1) "was carried out with planning, sophistication or professionalism" and (2) "involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."

6

The court sentenced Avitia to an aggregate sentence of 27 years plus seven years to life in prison.

As an initial matter, the court found count 1—attempted murder—was premised on "the 'click click click' with the gun," while count 2—assault with a semiautomatic firearm—arose from "the beatdown with the gun."  It concluded the counts did not occur "necessarily on the same occasion" because they were "clearly separate instances," so "they didn't have to have separate intents."  Nonetheless, the court said, "I do find the two different boxes, the indeterminate box"—count 1—"and the determinate box"—count 2— "occurred at different times, different places, with different intents."

The court also noted the jury "made a finding that this involved planning" and said, "I don't necessarily see sophistication or professionalism, but I certainly see planning in this."  The court also thought the jury's "finding that this was cruel, vicious, and callous" was "true."

As to count 1, the court imposed a base term of seven years to life, plus consecutive terms of ten years for the firearm enhancement, three years for the great bodily injury enhancement (stayed), and five years for the serious felony prior.

In imposing sentence on count 2, the court again stressed "the separate act, separate location, separate intent."  The court noted "[t]he jury has made independent findings of aggravating circumstances," and it said it weighed those, as well as Avitia's criminal history, "versus the mitigating factors" before finding the aggravating factors outweighed the mitigating ones.  The court accordingly imposed the upper term of nine years, imposed and stayed a ten-year sentence on the firearm enhancement, and imposed a three-year

term for the great bodily injury enhancement. The court concluded counts 1 and 2 should run consecutively.

The court sentenced Avitia to the upper term of six years on count 3—first degree burglary—but stayed it, and also imposed and stayed ten-year and three-year terms for the firearm and great bodily injury enhancements, respectively. The court imposed and stayed an upper-term sentence of three years for count 4—unlawful possession of a firearm—and a one-year sentence for count 5—misdemeanor resisting arrest. The court imposed one five-year term for the serious felony prior on counts 2 through 4 but struck the punishment.

## II.

We address each of Avitia's arguments in turn.

## A.

First, Avitia claims the trial court erred in finding section 654 did not apply to counts 1 and 2. We disagree.

### 1.

Under section 654(a), "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall [it] be punished under more than one provision." Section 654(a) "precludes multiple punishments for" an "indivisible course of conduct" as well as a single act. (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

Whether a transaction is divisible is determined by the "defendant's intent and objective, not the temporal proximity of his offenses." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore

8

may be punished only once." (*Ibid.*)  But if the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, [t]he [defendant] may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

2.

As an initial matter, the parties disagree as to the applicable standard of review. Avitia claims our review is de novo because we are analyzing "undisputed facts." (Citing *Harrison*, 48 Cal.3d at p. 335.) The People, on the other hand, seek substantial evidence review. (Citing *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.)

"Whether section 654 applies in a given case is a question of fact for the trial court" that we review for substantial evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Although the Supreme Court has held "the applicability of [section 654] to *conceded* facts is a question of law" (*Harrison*, 48 Cal.3d at p. 335, italics added), the facts here were disputed by defense witnesses. Thus, we review for substantial evidence.

"[W]e review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) Such evidence can include not only circumstantial evidence, but also all reasonable inferences drawn from it. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.)

3.

Avitia asserts several reasons why the court's refusal to apply section 654 to counts 1 and 2 was allegedly erroneous, but none persuades us.

Avitia contends the trial court abused its discretion because it misunderstood that section 654 applies not only to single acts but also to an indivisible course of conduct. Just because the court found that the facts here involved "separate instances," however, does not mean it failed to appreciate the full scope of the law. The court made no findings on an indivisible course of conduct because, having found separate acts, it did not need to. For the same reason, we discern no misunderstanding of the law by the court claiming separate intents were not necessary. At any rate, the court also found different intents for Avitia's attempts to shoot Ana and his beating her with the gun. As a result, Avitia has not established abuse of discretion on this basis.

Next, Avitia claims the attempted shootings and gun beating were an indivisible course of conduct because they occurred "in the span of a few minutes, if not a few seconds." But the law turns on the defendant's intent in committing, rather than the temporal proximity of, the acts. (*Harrison*, 48 Cal.3d at p. 335.) And in reply, Avitia acknowledges this district has found section 654 inapplicable to shots fired just a minute apart. (Citing *People v. Trotter* (1992) 7 Cal.App.4th 363, 366, 368.) While a relevant consideration, timing is not dispositive.

According to Avitia, counts 1 and 2 "were necessarily based on the same set of facts" because the People argued each act as a means of committing both the attempted murder and the assault. Even so, nothing precluded the jury or the court from separating the acts into two distinct offenses. Rather, viewing the evidence in the light most favorable to the judgment, Avitia's

"pacing" between the shooting attempts and the beating indicate an opportunity to reflect and deliberate. A jury could reasonably infer from the fact Avitia only hit her several times with the gun that Avitia's intent during that time changed from killing Ana to injuring her. The evidence thus belies Avitia's statement that his "only objective in this case was to kill" and "there was no evidence that he harbored any other objective."

Avitia claims the People concede "counts 1 and 2 were committed pursuant to a single objective" by not addressing it. Avitia is mistaken; the People claim the court's finding that the attempted murder and the assault had "separate intent[s]" "is supported both in case law and the record on appeal." Even had the People failed to address the issue, however, a respondent's "failure to respond to an opponent's argument may be unwise as a tactical matter, but such failure does not warrant" finding the point conceded. (*People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3.)

In claiming the court's findings were supported by the record, the People rely on *Trotter*, in which this district affirmed consecutive sentences for assault premised on two different shots fired a minute apart at pursuing law enforcement from a moving vehicle. (Citing *Trotter*, 7 Cal.App.4th at pp. 365-369.) Avitia claims *Trotter* is distinguishable because the offenses here were not "committed by distinct acts, in different locations, and at different times." While the facts are not the same, for the reasons already noted, the jury reasonably could have concluded Avitia had different intents in firing the gun and using the gun as a bludgeon. *Trotter* is thus persuasive, particularly its determination that a defendant "should not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he [or she] voluntarily resumed [their] assaultive behavior." (*Id.* at p. 368 [cleaned up].)

11

In short, the trial court did not err in concluding section 654 was inapplicable to counts 1 and 2.

B.

Second, Avitia argues the trial court erred in failing to instruct the jury it had to specify the crimes to which each aggravating circumstance applied, and for that reason the court erred in imposing upper-term sentences on counts 2 through 4. We, however, discern no instructional error and conclude Avitia forfeited his challenge to the court's imposition of upper-term sentences based on this alleged instructional error by failing to timely object.

1.

The People sought true findings by the jury on three aggravating circumstances they alleged applied to the charged offenses: (1) "the offense involved great violence, great bodily harm, or other facts disclosing a high degree of cruelty, viciousness, or callousness within the meaning of California Rules of Court, rule 4.421(a)(1)"; (2) Ana "was particularly vulnerable" under rule 4.421(a)(3); and (3) "the offense was carried out with planning, sophistication or professionalism" under rule 4.421(a)(8).

The jury here was instructed on March 2, 2023. Pattern jury instructions for the aggravating circumstances, however, were not adopted until March 24, 2023. (Judicial Council of Cal., March 24, 2023 Meeting Minutes at pp. 2-3.)[1] As there were no existing instructions, the court and the parties had to draft their own.

The jury was instructed it had to decide whether each of the allegations existed, drawing from the language of rule 4.421(a). The only wording changes involved exchanging the term "the crime" for "the offense" and

---

[1] The parties' briefing is vague as to when these instructions went into effect. On our own motion, we judicially notice the effective date of these instructions. (Evid. Code, §§ 452(c), 455(a), 459.)

12

omitting some bases for finding the allegations true. The instructions included some definitions for relevant words, for example, "[p]rofessionalism," "'[v]iciousness,'" and "'[v]ulnerability.'" Consistent with section 1170(b)(2), each instruction stated that "[t]he People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true." Each also directed the jury to "[i]nclude a special finding on the question of whether such allegation is true or not true in your verdict, using a form that will be supplied for that purpose." Neither the instructions nor the relevant verdict forms—the latter of which Avitia does not challenge—advised the jury as to the counts to which the allegations applied.

The jury found true "the offense" (1) "was carried out with planning, sophistication or professionalism" and (2) "involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness," but found untrue the particularly vulnerable victim allegation.

The instructions approved effective March 24, 2023, instruct the jury it "must decide whether the People have proved this allegation for each crime and return a separate finding for each crime," and the bench notes indicate "[t]he court should specify which crimes the aggravating factor pertains to if it applies to one or more specific counts." (CALCRIM No. 3224; see also CALCRIM Nos. 3226, 3230 [similar].) The bench notes cite no guiding authority for this proposition.

2.

We review claims of instructional error de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.) "In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding

13

of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" (*People v. Carrington* (2009) 47 Cal.4th 145, 192.)

"The language of a statute is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification." (*People v. Krebs* (2019) 8 Cal.5th 265, 331 [cleaned up].) "'Where an instruction on a particular point or points as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness,'" a defendant who desires more detailed or explicit instructions "'must properly request the same'" or forfeit the claim of error. (*People v. Reed* (1952) 38 Cal.2d 423, 430.)

3.

Avitia claims the jury instructions on aggravating circumstances were legally erroneous in failing to specify to which of the five counts they applied. We disagree.

Here, the court's instructions generally tracked the wording of the California Rules of Court, which "'"have the force of statute."'" (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 125.) Consistent with section 1170(b)(2), the instructions noted (1) it was the People's burden to prove the truth of the allegation beyond a reasonable doubt and (2) the jury should return a not true finding if any reasonable doubt existed. At the time the jury was instructed, these were accurate statements of the law. To the extent Avitia believed further instruction was required, it was incumbent upon him to request it. He failed to do so. Accordingly, even if it would have been desirable for the court's instructions to specify, as the pattern

14

instructions now do, that the jury "must decide whether the People have proved this allegation *for each crime* and return a separate finding *for each crime*," the court properly instructed the jury on its duties under the state of the law as it then existed. (CALCRIM No. 3224, italics added; see also CALCRIM No. 3230 [similar].) Whether the verdict forms were adequate is a separate issue not before us.

According to Avitia, the People "agree[ ] that the trial court's instruction on the aggravating sentencing factors was legally erroneous because it did not specify the applicable counts." Avitia, however, misreads the respondent's brief. The People appear not to take a stance on this issue, instead contending "[a]ny error"—not *the* error—"in failing to specify which counts the instructions applied to is nonetheless harmless." Again, as the respondent, the People have no duty to respond to every argument Avitia advances. (*Hill*, 3 Cal.4th at p. 995, fn. 3.) We decline to conclude the People conceded error on this point.

In short, we conclude the court's instructions on aggravating circumstances were not erroneous. Given this conclusion, Avitia's related claim his trial counsel was constitutionally ineffective for failing to object to these instructions necessarily fails. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel."].)

4.

According to Avitia, the allegedly erroneous instructions permitted the trial court to incorrectly "impose upper term[ ] sentences on crimes that the jury did not necessarily find to be aggravated." Yet Avitia forfeited this argument by failing to object to the court's imposition of allegedly improper upper-term sentences at the time of sentencing. (See *People v. Anderson*

15

(2023) 88 Cal.App.5th 233, 242.) Accordingly, we do not reach the merits of this issue as it relates to instructional error.

C.

Third, Avitia claims the court erred in imposing the upper term on count 2 because no evidence, much less substantial evidence, supported the jury's finding that the assault with a firearm was committed with planning. Rather, Avitia contends, the assault was "a sudden, spontaneous act." The People, meanwhile, argue Avitia planned his crime by arming himself; wearing his brother's memorial shirt so Ana would know why Avitia was targeting her; and striking in the midafternoon, a time Ana would feel safe in her home. According to the People, "[t]he fact that the gun failed to fire and [Avitia] chose to instead use it as a club is not an abandonment of or departure from his plan, but a modification of that plan based on the unforeseen circumstance of the gun not firing." We conclude the People have the better argument.

As noted above, Ana testified Avitia paced between the final misfiring and the subsequent bludgeoning with the gun. A jury could infer Avitia was considering his options during that time and ultimately revised his plan from killing to injuring Ana. Although the shootings and the gun beating occurred over a relatively brief period of several minutes, a plan can be arrived at quickly. (See, e.g., *People v. Memro* (1995) 11 Cal.4th 786, 863 [in homicide cases, noting "[p]remeditation and deliberation can occur in a brief interval" and reflection rather than time is the relevant factor].) We thus conclude substantial evidence supports the jury's implicit finding such reflection occurred here.

Avitia further contends no evidence established any planning made the assault "'distinctively worse,'" relying on the statement in *People v. Black*

16

(2007) 41 Cal.4th 799, 817, that "[a]n aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.'" We are unconvinced by Avitia's argument, however, as it is the act of planning and taking calculated action itself that makes the offense worse than an assault that is the product of provocation or other rash impulse. Thus, in finding planning, the jury implicitly found the assault with a semiautomatic firearm distinctively worse. It is for that reason the aggravating circumstance can be used, at the court's discretion, to impose the upper term.

In sum, we conclude the jury's finding of planning was sufficient and supported by substantial evidence.

D.

Fourth, Avitia claims his trial counsel was constitutionally ineffective for failing to object to the court's alleged dual use of facts in imposing both a great bodily injury enhancement on count 2 as well as relying on the aggravating circumstance that "[t]he crime involved great violence, great bodily harm, . . . or other acts disclosing a high degree of cruelty, viciousness, or callousness" to impose the upper term. (Cal. Rules of Court, rule 4.421(a)(1).) We are unpersuaded.

To establish ineffective assistance of counsel, the defendant must show both that (1) "counsel's representation fell below an objective standard of reasonableness . . . [¶] under prevailing professional norms," and (2) "there is a reasonable probability"—one that "undermine[s] confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)

A court cannot use a fact both to impose an enhancement and to impose the upper term. (*People v. Scott* (1994) 9 Cal.4th 331, 350.) "[W]hen an

17

appellant claims the trial court made an impermissible dual use of a fact as both an enhancement and an aggravating factor," we look at "whether the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) But if the court "could *only* have based the aggravating factor on the evidence giving rise to the enhancement, the sentence must be reversed." (*Ibid.*) Thus, contrary to Avitia's claim, we need only conclude substantial evidence supports at least one of the factors. We so conclude.

We agree the court could not rely on great bodily harm to aggravate Avitia's sentence on count 2 given the great bodily injury enhancement. (See *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1735.) But as the People argue, "a finding of great injury . . . is only one way of finding the aggravating factor . . . true." Here, the court specifically called out the "cruel, vicious, and callous" nature of Avitia's acts—not the great bodily injury—in addressing this aggravating circumstance as it applied to the "crimes" Avitia committed, which includes the count 2 assault.

On this record, the court reasonably could have based its imposition of this aggravating factor on cruelty, viciousness, and callousness. Avitia bludgeoned Ana, who was unarmed and did nothing to provoke the attack, with a firearm until she fell. He then "calmly" walked away without rendering or seeking aid for her. Evidence other than that underlying the enhancement thus supports the aggravating factor, so reversal is not required.

Because there was no error, Avitia's trial counsel's failure to object was not objectively unreasonable. (*Bradley*, 208 Cal.App.4th at p. 90.) Avitia's claim for ineffective assistance of counsel therefore fails.

18

## E.

Fifth, Avitia argues no evidence was presented that he possessed his firearm with violence or had acquired the gun via planning to support the imposition of the upper term on count 4. We agree.

"Implicitly, the crime [of firearm possession by a prohibited person] is committed the instant the felon in any way has a firearm within his [or her] control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410, italics omitted.)

Here, the record is devoid of *any* facts relevant to Avitia's simple possession of the firearm. No evidence was presented as to how, when, or from whom he acquired the gun. The People do not even address the great bodily injury or violence circumstance in their brief, and their argument Avitia planned not just to possess the gun but to break into Ana's home and use it relies on the conduct underlying counts 1 through 3, for which Avitia has been punished separately. We therefore conclude substantial evidence does not support the aggravating circumstances used to justify imposing the upper term on count 4. As a result, we reverse the true findings on the aggravating circumstances as to this count.

Because the court found at least one "big" mitigating circumstance applied here—Avitia's prior successful completion of probation—we cannot be certain the court necessarily would have imposed the middle term on this offense absent the aggravating circumstances. Accordingly, we remand for resentencing as to count 4 only.

## F.

Lastly, given we have identified only one sentencing error—the true findings as to the aggravating circumstances as to count 4—Avitia's claim that the combination of "myriad sentencing errors" violated his "right to a

fair sentencing hearing" cannot stand. "As there are no other errors to cumulate, the defendants' claim of cumulative error must be rejected." (*People v. Jimenez* (June 3, 2025, H049356) __ Cal.App.5th __ [2025 WL 1834002, at p. *22].)

## III.

We reverse the true findings on the aggravating circumstances as to count 4 and remand for the trial court to (1) resentence Avitia on count 4 only, (2) prepare an amended abstract of judgment in conformity with this opinion, and (3) forward a certified copy of the same to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.